## LINCOLN L. McCANDLESS *v.* SOLOMON MAHELONA, WAIANAE COMPANY and KALAMA.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED SEPTEMBER 26, 1899.     DECIDED DECEMBER 9, 1899.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE STANLEY, IN PLACE OF JUDD, C.J., ABSENT.

Acceptance of money for taxes on the land from the true owner of an undivided half by the owners of the other undivided half who were in possession is held, with other slight evidence, sufficient to support a finding by the jury that the possession was not adverse, in an action to quiet title.

### OPINION OF THE COURT BY FREAR, J.

This is an action to quiet the title to the land described in Royal Patent 1067, L. C. A. 2977, to Paupau, situated at Waianae, Oahu. The defendant Kalama disclaimed and the defendant Waianae Company did not appear. The case was tried between the plaintiff and the defendant Mahelona before a jury, which returned a verdict for an undivided half of the land for each party, and the case comes here on an exception to the over-

ruling of a motion for a new trial on the ground that the verdict was contrary to the law and the evidence.

There were two issues, inheritance and adverse possession. As to inheritance, the original patentee of the land was one Paupau who died intestate in the early seventies and the question was, who inherited from him? The plaintiff claimed that Paupau's only heir was his widow, Makaakau, from whom he, the plaintiff, claims title to the whole land by mesne conveyances. The defendant claimed that Paupau's only heir was his brother, Wahineino, from whom he, the defendant, claims title by descent to Poopu, Wahineino's widow, and by conveyance from Poopu to himself. The jury found that Paupau left both widow and brother surviving him and consequently that the plaintiff and defendant were each entitled to one-half of the land, so far as the issue of inheritance was concerned. The verdict is not questioned upon this issue.

The plaintiff claimed also by adverse possession. Makaakau executed a deed purporting to convey the whole land to Kalipo and Kaiwi on June 2, 1877, the purchase price being paid by Poe Wallace, father of Kalipo and half brother of Kaiwi. These grantees and Wallace were in possession until the conveyances to the plaintiff on July 20 and September 20, 1898, and the question was whether this possession was adverse for twenty years as against Poopu, who conveyed to the defendant on August 29, 1898. Defendant contends that Poopu's title was recognized up to 1884, and that it was then disputed only on the ground that she was not the wife of Wahineino, and that even then it was admitted that if she were his wife, she would be entitled to one-half of the land.

The testimony relied on to show this is as follows: Poe Wallace, one of plaintiff's witnesses testified, on cross-examination, that Poopu came to him in 1883 and 1884 and laid claim to part of the land and that he refused it and said to her: "You may be the wife of this man, married by law and you may not. I don't know anything about it. Go home." Again, later on, he testified that she came to him and demanded half of the land

and said she was the wife of Wahineino, but that he told her to go before the court and substantiate her claim through marriage, and that he then disputed her marriage, and in answer to the question, "And so you admit at that time that if she was legally married to Wahineino she had some claim to that land?" he replied, "Yes sir, I said so, and if your claim is good you go before the court and make it good," and that he said to her in substance that he would not give the land up then because he did not believe that she was married to Wahineino.   Later on he testified: "If there was a child (of Wahineino) I could not hold what I do."   Later on he testified: "It was in the year 1884 that Poopu claimed the land and I understood that she claimed a portion of this land and I refused; not before that time.   She made no claim before 1883 or 4, that is when I declined to acknowledge her claim, and told her to go before the court."

Poopu testified that when Makaakau died, she came up (she lived at Waialua) and found that Makaakau had disposed of the land to Kaiwi and a young woman, and "I went over there and saw these people were living on the land and proffered them my taxes on the land and it was all right.   This continued on until '83 or '84 when I went up at that time and Kaiwi told me that they had some doubt about my being a married woman, married to this Wahineino, and if I thought I had a widow's right I had better come before the court and prove it."

Kalaluhi, adopted son of Wahineino, testified that he went with Poopu to Poe Wallace in regard to the land the first time and that Poe told them "to go back and prepare to have some money for the paying of the taxes and come back.   We did come back again with the money according to the amount which we were told to bring.   We were told to bring $10.   We took the money to Poe and to Kaiwi.   They took the money.   After this first visit with the money after that we went away.   We stayed until we thought it was time to bring another $10 to pay the government taxes and when we did come we were told by Poe that we had no right at all to the place and he told us to go away. That was the year '84, the last time we went there, when we were

told we had no rights to the land. It was in 1883 when we first came to pay the $10, it was received by Poe."

Kaaiholei testified: "I heard directly from Poe Wallace that Poopu came and brought him $10 tax money. He told me that this Poopu brought the tax money for her share of the land. He didn't tell me whether he didn't take it, that was in 1883 that Poe had this conversation with me and told me of it."

The court instructed the jury in substance that occupation though undisturbed did not amount to adverse possession if it was under or by permission of or in recognition of the title of the true owner, and that an acceptance of money as taxes on the land from the true owner by one in possession, knowing it to be paid by the true owner as taxes due by him, and not accepted as a gift or a loan, would constitute a recognition of the title of the true owner and interrupt the running of the statute of limitations. No exceptions were taken to these instructions.

In our opinion there was sufficient evidence to support the verdict. It was for the jury to pass upon.

The exception is overruled.

*Cecil Brown* for the plaintiff.

*Robertson & Wilder* for the defendants.